# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

JAMES HUFFNAGLE, JAMES HEARN, )
REINHOLD HOLTKAMP, )
WILLIAM HEMRICK, MELVIN W. MARTIN, )
HOWARD LUARTES, individually and in his ) Case No.:
Capacity as Member and Director, on behalf of ) JURY DEMAND
TEA PARTY HD, LLC, )
 )
    Plaintiffs, )
 )
 )
v. )
 )
ANTHONY LOIACONO, individually and )
d/b/a HEADS & TAILS, INC., a suspended )
California corporation, )
 )
    Defendants. )

---

## VERIFIED COMPLAINT

---

COMES NOW James Huffnagle, James Hearn, Reinhold Holtkamp, William Hemrick,

Melvin W. Martin, and Howard Luartes, individually with tort claims against the Defendants, and

Howard Luartes also sues on behalf of Tea Party HD, LLC, in his capacity as member and director,

and files this shareholder's derivative action pursuant to T.C.A. 48-17-401 and Federal Rule of

Civil Procedure 23.1, against Anthony Loiacono, individually, and d/b/a Heads & Tails, Inc.

## BACKGROUND AND OVERVIEW

### PARTIES

1.     Plaintiff James Huffnagle is a resident of Dickson County, Tennessee.

2.     Plaintiff Howard Luartes is a resident of Williamson County, Tennessee.

3.     Plaintiff Reinhold Holtkamp is a resident of Williamson County, Tennessee.

4.       Plaintiff William Hemrick is a resident of Williamson County, Tennessee.

5.       Plaintiff Melvin W. Martin is a resident of Williamson County, Tennessee.

6.       James Hearn is a resident of Davidson County, Tennessee.

7.       Plaintiff Tea Party HD, LLC is a Director managed, Tennessee limited liability corporation, principal place of business at 5256 S. Mission Rd., Suite B, Bonsall, California, 92003.

8.       At all times, Plaintiffs were members and/or directors of Tea Party HD, LLC for the events and transactions alleged within this action. There are no other investors or members who have not joined in this action, and this action adequately represents the interests of the members of Tea Party HD, LLC in enforcing the rights of the company.

9.       Defendant Anthony Loiacono resides in Bonsall, California, San Diego County, 92003.

10.      Defendant Heads & Tails, Inc. is a suspended California corporation, and may be served through Anthony Loiacono, Chief Executive Officer and shareholder, who does business as Heads & Tails, Inc.

## JURISDICTION AND VENUE

11.      The causes of action arise from violations of the Securities Act of 1933, Securities Exchange Act of 1934, Tennessee Securities Act of 1980, Tennessee Consumer Protection Act, Tennessee law, and common law.

12.      This court has jurisdiction over this cause pursuant to a federal question relating to § 22(a) of the Securities Act of 1933 and § 27 of the Securities Act of 1934.

13.      Venue is proper in this court pursuant to a forum selection clause agreed to by the parties in the Operating Agreement of Tea Party HD, LLC.

14.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

## FACTUAL ALLEGATIONS

15.     On July 2, 2010, Defendant Anthony Loiacono formed Tea Party HD, LLC. Loiacono was a Charter Director, along with Plaintiff William Hemrick. Other members were later made directors as well.

16.     Plaintiff Hemrick selected Plaintiff Melvin Martin to be a Charter Elected Director, and Defendant Loiacono selected a man named Steve Maddox. Mr. Maddox never contributed any funds, never attended any meetings, and has never had any involvement in any fashion with Tea Party HD. None of the Plaintiffs have ever seen or spoken with Mr. Maddox. His involvement was likely just so that Defendant Loiacono could obtain his vote by proxy and bolster his own vote.

17.     Later, the Non-Charter members elected Plaintiff Holtkamp and Plaintiff Luartes as non-charter Directors. All Director positions have equal vote in TPHD.

18.     The alleged purposed of Tea Party HD was to be the "world's first HD provider of news about the Tea Party." In reality it was an investment scheme to defraud politically conservative-minded citizens who support the Tea Party mission.

19.     Loiacono prepared an "Investment Brief" (Exhibit A) to lure potential investors of Tea Party HD, promising huge returns on investment. An accompanying "Board & Investor Presentation" soon followed (Exhibit B).

20.     Investors were told that Tea Party HD, LLC had two founding members, Bill Hemrick and Anthony Loiacono, who had contributed $60,000 each, and personal services, and were each 50% owners (See Operating Agreement, Exhibit C). Upon information and belief, Loiacono did not make his $60,000 contribution in violation of T.C.A. § 48-232-101. Loiacono

then took Plaintiff Hemrick's $60,000 and paid it to Defendant Heads & Tails, Inc. and did not credit that money to Plaintiff Tea Party HD, LLC.

21.     Within 30 days of formation of the company, TPHD offered 30% of the Financial Rights and 7.5% of the Governance Rights for initial capital contributions from others.

22.     On June 24, 2010, Defendant Loiacono gave Plaintiffs a presentation at Old Natchez County Club in Franklin, Tennessee, about the investment opportunity in TPHD which was projected to make nearly $19 million before the end of the third year. (See Exhibit C)

23.     Potential investors were offered membership in Tea Party HD, LLC, for $35,000, in addition to allegedly obtaining a percentage point of Financial Rights and ¼ percentage point of Governance Rights.

24.     The following initial investments were made:

| | |
|---|---|
| James Huffnagle, M.D. | $70,000 |
| Howard Luartes | $17,500 |
| Mel Martin | $35,000 |
| James and Mona Hearn | $35,000 |
| Reinhold Holtkamp | $35,000 |
| Bill Hemrick | $60,000 |

(See Exhibit D for a sample Contribution Agreement).

25.     At a later date, Loiacono said more investment money was needed to continue to run the company. He represented to the investors that the TPHD website was getting "20 million viewers" in order to reassure them that TPHD was continuing to be a viable company. In reality, Loiacono had no way of measuring viewers on the webpage, and the number was completely fabricated.

26.     As a result of Loiacono's representation that the website was getting so many viewers, and Loiacono's insistence for the need for more capital, Plaintiff Huffnagle contributed another $35,000, and has a total of $105,000 invested. Plaintiff Huffnagle was never given any signed writing to document his additional $35,000 contribution, or additional gain in Financial Rights or Governance Rights.

27.     Defendant represented to the Plaintiffs that the capital from the investment would be used as TPHD operating capital.

28.     Loiacono did not invest the funds from the investments to build TPHD, as was represented to the Plaintiffs. Instead, Loiacono used the funds to pay himself through the suspended California corporation Defendant Heads & Tails, Inc., and his family members, exorbitant rates on the few projects that TPHD undertook, but the projects in reality were all a sham to pay Loiacono money.

29.     Loiacono failed to bid out any jobs for TPHD, but instead gave projects to his own company, Heads & Tails, and then submitted invoices for services far and above market rate. Meanwhile, legitimate services and expenses of TPHD were, and still are, unpaid, such as the legal bill for Phillip Robertson, TPHD's attorney who helped formed the corporation, and Mr. Michael Mareschal, the accountant. Mr. Mareschal is also the accountant for Defendant Heads & Tails.

30.     Defendant Loiacono knew or should have known that TPHD was not a legitimate investment vehicle that he represented to the Plaintiffs.

31.     Loiacono led the Plaintiffs to believe that TPHD was a legitimate business venture, when in reality, Defendant directly knowingly and intentionally misrepresented the purpose, and later, withheld financial documents of the business from the Plaintiffs. When asked to produce the

invoices for services rendered, and accounting records, Defendant Loiacono either provided incomplete books, or failed to provide requested information, such as invoices for services.

32. The statements made to the Plaintiffs were false in that Defendant directly and/or indirectly through the actions and statements of others stated that TPHD was able to invest the Plaintiffs' money for a return that would allow for the timely payment of profit and return on investment, which was projected at three (3) years. In reality, TPHD was a sham in which Defendant Loiacono treated TPHD as a sole proprietor, and took nearly all the investment capital for himself.

33. In addition to the false information regarding the use of the capital and the ability of TPHD to pay the projected returns on the investments, Defendant provided substantial amounts of false information, including:

    a. That all investment capital, especially that of Plaintiff William Hemrick, was used for the benefit of TPHD.

    b. That Defendant Loiacono ever invested $60,000 of his own money in TPHD.

    c. That any effort was ever made to sell advertising, banner ads on the website, and to track hits on the website.

34. The Plaintiffs believed the statements made by Defendant Loiacono were true and the Plaintiffs justifiably relied on these statements when investing in and attempting to become members in TPHD.

35. Defendant failed to provide investors with substantial amounts of material information including:

    a. The personal use of the capital raised from Plaintiffs by Loiacono and others.

b.     The true nature of TPHD as a Ponzi scheme, or some kind of sham investment scheme.

c.     The inability of TPHD to repay the principal balance of the investors.

d.     The lack of viability of TPHD to be an actual company when Loiacono was using it as his personal bank account, failed to secure proper capital, and personally took what investment was available for his own purposes and for that of Defendant Heads & Tails, at exorbitant rates.

36.     None of the Plaintiffs received their K-1 tax forms in a timely manner.

37.     Loiacono has failed to manage the company properly. He failed to pay creditors such as:

a)     Phillip Robinson, the attorney who formed Tea Party HD, LLC,

b)     salesman Kevin Jackson of The Black Sphere, the commission he was due for generating ad revenue, which was a substantial influx of revenue not made by capital contributions.

38.     Loiacono further abandoned his duties to the other members by walking away from TPHD, and he failed to file the annual report which caused the company to be administratively dissolved and the members having to pay fines to reinstate it with the Tennessee Secretary of State, failed to timely file income taxes or pay taxes due, and failed to call the annual meeting.

39.     Perhaps more egregiously, Defendant Loiacono further failed to provide and disclose financial and accounting information after being asked (see March 9, 2011 letter to Loiacono, Exhibit E), and failed to secure ongoing business and revenue streams as promised.

40.     Despite the TPHD being insolvent in early 2011, Defendant Loiacono committed TPHD to produce the response of Michele Bachmann to the State of the Union address. When Defendant later abandoned a commitment to cover the Tea Party Town Hall in February 2011, and

left the Plaintiffs scrambling to cover the commitment, they found out they could rent equipment far more cheaply than Loiacono had been billing for services, provided by his own company, Defendant Heads & Tails, Inc. Plaintiffs began to realize the conflict of interest and self dealing in which Defendant Loiacono had been engaging.

41.    As a result of the fraudulent misrepresentations and self dealing of Defendant, Plaintiffs have been damaged in the amount of $287,500, representing the face amount of the Plaintiffs' investment in TPHD. In addition Plaintiff have lost an additional $19,000 from other contributions made to cover other out of pocket business expenses.

42.    On or about March 9, 2011, Plaintiffs attempted to redress their grievances with Defendant Loiacono by having a lawyer to send Loiacono a letter and outline the many issues and problems they were having with Loiacono (Exhibit E). Among other things, Plaintiffs asked for financial and accounting information pertaining to Tea Party HD, LLC. Defendant Loiacono, while acting in his capacity as a Director of TPHD, and the manager of operations, has refused to provide full accounting and financial information upon request of Plaintiffs, in order to cover up corporate waste, misappropriation of funds, self-dealing, and fraud. Most notably, not one contract or invoice has ever been produced to show that the charges made to TPHD by Loiacono and Heads & Tails were legitimate or reasonable.

43.    As such, Plaintiffs have not made an effort to secure initiation of an action to secure the relief prayed for herein by the Board of Directors Tea Party HD, or made a demand upon the corporation pursuant to Tenn. Code Ann. § 48-56-401(c) because doing so would be futile, as Loiacono has already refused to respond or cooperate.

# CAUSES OF ACTION

## COUNT I - NEGLIGENT MISREPRESENTATION

44.     The allegations contained in Paragraphs 1-43 are re-alleged and incorporated by this reference as if set forth herein.

45.     Defendant contacted the Plaintiffs in person through his agent Bill Hemrick, or in a presentation at Natchez Trace Country Club, and asked them to invest in an investment scheme known as Tea Party HD. These discussions were made in a business setting as Defendant, or his agent and founding member, Plaintiff William Hemrick, convinced the other Plaintiffs to invest in the investment scheme.

46.     Defendant Loiacono received a direct financial benefit as a result of the investment of Plaintiffs.

47.     Defendant falsely represented to the Plaintiffs that the funds from the payment of $35,000 per share would be invested as TPHD operating capital. In reality, the funds were used to make exorbitant payments to Defendant Loiacono through Defendant Heads & Tails, and for other uses not represented to the Plaintiffs. Loiacono's false representations were intended to provide a measure of security to the Plaintiffs that they would receive the return on their investment, and that TPHD was a viable company worthwhile of investment.

48.     The statements made to the Plaintiffs were false in that Defendant stated he would be able to invest the Plaintiffs' money for a return that would allow for the timely payment of re-payment of the original investment, plus a substantial sum in profit.   In reality, Loiacono was unable or unwilling to invest the money as represented to the Plaintiffs.

49.     At the time of the original investment, Defendant knew or should have known that TPHD lacked the present or potential ability to make any money to pay Plaintiffs and other

similarly situated investors back, or especially to generate profit, because the funds solicited solely to pay himself and his family members, as well as Defendant Heads & Tails.

50.     On information and belief, the initial investment of Hemrick, and Plaintiffs, was a Ponzi scheme intended to defraud investors, or simply a fraudulent enterprise to take Plaintiffs' money.  The scheme was only going to work by bringing in new investors, and even then, the viability of the company was questionable.

51.     The Plaintiffs believed the statements disseminated by Defendant were true and the Plaintiffs justifiably relied on these statements when investing in TPHD.

52.     The negligent misrepresentations of Defendant has harmed the Plaintiffs resulting in the loss of their entire investment plus the promised profit return.

## COUNT II - FRAUDULENT MISREPRESENTATION

53.     The allegations contained in Paragraphs 1-52 are re-alleged and incorporated by this reference as if set forth herein.

54.     Defendant directly and/or indirectly through the actions and statements of others knowingly and recklessly represented to the Plaintiffs that their investment in TPHD would be invested in operating capital. In reality, Defendant Loiacono knew that the funds would not be used in the manner represented to the Plaintiffs.  The funds contributed and invested by Plaintiffs were used to pay Loiacono himself through Defendant Heads & Tails, and/or to his family members, and for other uses not represented to the Plaintiffs. Defendant's false representations were intended to provide a measure of security to the Plaintiffs that TPHD was a viable company worthy of investment.

55.     Defendant Loiacono intentionally misrepresented to the Plaintiffs that the TPHD website was getting "millions of views" when there was no basis for this statement, other than to

continue to mislead the Plaintiffs into believing that TPHD was a viable company, and to fraudulently induce Plaintiff Huffnagle to invest an additional $35,000 in TPHD.

56.     Defendant's Loiacono's made other false statements, such as stating he would be able to invest the Plaintiffs' money for a return that would allow for a large profit.  In reality, Defendant was unable or unwilling to invest the money as represented to the Plaintiffs.

57.     At the time of each respective investment, Defendant knew that TPHD was not ever going to be a real company, but rather a means by which Defendant would enrich himself, his company Heads & Tails, and his own family members.

58.     The statements made to the Plaintiffs were false in that Defendant Loiacono knew that he had taken corporate funds for his own use and benefit and intentionally and knowingly disguised non-business related personal expenses as legitimate expenditures for Tea Party HD.

59.     The Plaintiffs believed the statements disseminated by Defendant were true and the Plaintiffs justifiably relied on these statements when investing in TPHD.

60.     Further, Defendant Loiacono fraudulently inflated charges made to Tea Party HD, such as for rent, labor charges, and other expenses in order to enrich himself and Defendant Heads & Tails.

61.     Defendant Loiacono's knowing misrepresentations have harmed Plaintiffs, resulting in the loss of their entire investment plus loss of business opportunity.


## COUNT III - CONVERSION

62.     The allegations contained in Paragraphs 1-61 are re-alleged and incorporated by this reference as if set forth herein.

63.     Defendant Loiacono has taken or caused to be taken money from the Plaintiffs in the amount $287,500, representing the face amount of the Plaintiffs' investment in TPHD. In addition, Plaintiffs have lost at least an additional $19,000 from futher contributions made to cover other out of pocket business expenses.

64.     Defendant's conversion of Plaintiff's money has deprived Plaintiffs of their money.

65.     Defendants took Plaintiffs' money with the intent to permanently deprive the Plaintiffs of their money.

66.     The Defendant's actions caused Plaintiffs to suffer damages resulting in the entire loss of their investment money, plus other expenses they paid out of pocket on behalf of Tea Party HD.


## COUNT IV - ACCOUNTING FOR CORPORATE WASTE AND UNJUST ENRICHMENT

67.     The allegations contained in Paragraphs 1- 66 are re-alleged and incorporated by this reference as if set forth herein.

68.     The Defendant, Loiacono, while acting in his capacity as *de facto* President and self-proclaimed Chief Executive Officer of Tea Party HD, and as such, a *de facto* corporate officer, has enriched himself with benefits and perks for his own use and to the detriment of the members of TPHD, has misused and diverted funds, failed to account for the use of the funds and expenditures, and submitted invoices for payment to his own company, Defendant Heads & Tails, at rates far above market value.

69.     Defendant is obligated to prepare annual financial statements, including balance sheet and income statement, pursuant to T.C.A. §48-249-403(b), and has in bad faith, failed to do so. Defendant is required to furnish such statements to each requesting member or holder of

financial rights within one month after notice of request, pursuant to T.C.A. 48-228-201, and in bad faith, has failed to do so. Defendant failed to provide information regarding status of business and TPHD's financial condition, pursuant to T.C.A 48-228-202, and in bad faith, has failed to do so (see Letter to Loiacono, Exhibit E).

70.     Due to the refusal to provide full accounting and financial information upon request, Plaintiffs aver that Defendant Loiacono is covering for taking corporate funds for his own personal use, and taking many benefits and perks for himself and Defendant Heads & Tails, that were unauthorized by the Board of Directors because they were not at market rates. As such, Plaintiffs conferred unauthorized benefits on the Defendants.

71.     Defendant Loiacono realized the benefit as it enabled him to build up his own business, Defendant Heads & Tails, as well as his own personal financial status, and those of his children.

72.     Defendants have realized a substantial benefit, and it is inequitable for Defendants to retain these benefits without accounting for them paying these values to Plaintiffs.

73.     Plaintiffs demand a strict accounting of all funds as well as a valuation of all benefits conferred to Defendant Loiacono and Defendant Heads & Tails.

74.     Defendants are liable for compensatory damages to Plaintiffs, or should disgorge all monies that are been ill-gotten gains.

## COUNT V - BREACH OF FIDUCIARY DUTY OF CARE OF DIRECTOR

75.     The allegations contained in Paragraphs 1- 74 are re-alleged and incorporated by this reference as if set forth herein.

76.     By reason of Defendant Loiacono's position with TPHD as a Director, and as the sole person in charge of day-to-day operations, he is in a fiduciary relationship with TPHD and

owes a duty of care to the members and investors shareholders pursuant to T.C.A. §48-249-403(c), §48-249-403(i)(4)(B), §48-249-403(i)(4)(C), §48-249-403(j)(2) or §48-249-403(j)(3)

77. Loiacono's fiduciary duty of care requires that he act in good faith, in the best interests of members and with such the care as would be expected of an ordinarily prudent person in like position would exercise under similar circumstances and in a manner the director reasonably believes to be in the best interests of the company.

78. Defendant Loiacono failed to exercise diligence and good faith, or care and attention to the affairs of TPHD in the safekeeping and disbursement of the funds committed to his control.

79. Defendant Loiacono misappropriated funds and diverted funds from TPHD by self-dealing transactions, paying his family members and allowing others unauthorized benefits.

80. Loiacono has fraudulently concealed his misappropriation of funds, and engaged in self-dealing by: a) only giving business opportunities to Defendant Heads & Tails with false invoices or highly inflated invoices, and failed to seek out competitive pricing for jobs and events; b) paying his children instead of seeking out competitive and competent individuals to carry out business tasks of TPHD; c) signing contracts and doing business with Defendant Heads & Tails, a suspended California corporation, not authorized to do business.

81. Loiacono has intentionally concealed his actions by refusing to turn over financial and accounting information upon request, so that his breaches of duty were not readily discoverable.

82. Loiacono had a conflict of interest in transactions and he violated Tennessee law when he gave business opportunities to his own company, Defendant Heads & Tails, instead of competitively bidding them out.

83.     Loiacono is not protected by the Business Judgment Rule because Loiacono was acting in bad faith, and was interested in the transactions that diverted funds from TPHD, or he was grossly negligent in funneling all services rendered to TPHD through his own company, Heads & Tails, at highly inflated prices.

84.     Loiacono is liable personally, as well as a member and a director, for his misfeasance, nonfeasance, and his breaches of duty of care, which have damaged Plaintiffs.

85.     Defendant Loiacono is liable for compensatory damages for his breaches of duty of care.

## COUNT VI - BREACH OF DUTY OF LOYALTY

86.     The allegations contained in Paragraph 1- 85 are re-alleged and incorporated by this reference as if set forth herein.

87.     Pursuant to T.C.A. §§48-249-403(b)(1) or (2), and Defendant Loiacono has an obligation of "good faith and fair dealing" pursuant to §48-249-403(d). Defendant Loiacono is required to discharge all duties in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he reasonably believes to be in the best interest of the corporation.

88.     Defendant's fiduciary duty of loyalty requires that he must act independently so that the interests of TPHD will be protected; and adequately ensure that no conflicts of interest exist between Defendant's own interests and his fiduciary obligations to maximize company value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of TPHD.

89.     Defendant Loiacono failed to exercise the standard of care required of officers, and breached his duty of loyalty owed to Plaintiffs because, among other reasons, the Defendant:

a)      ignored or did not protect against the numerous conflicts of interest resulting from his own interrelationships or connection with Defendant Heads & Tails, and Tea Party HD;

b)      did not bid out jobs to get a competitive price, but rather gave himself and his company, Defendant Heads & Tails, jobs, and at rates that were above fair market value;

c)      engaged in nepotism by paying his children instead of qualified individuals;

d)      charged an exorbitant amount for "rent" to TPHD for office space, on Defendant Loiacono's own property, which did not even take up any space and was already being utilized for Heads & Tails, resulting in double compensation and an unfair rate to TPHD, all to Defendant Loiacono's self-enrichment;

e)      Paid himself and his family members, while at the same time failing to pay accounts due, and exposing TPHD to litigation from creditors.

f)      Engaged in other instances self-dealing.

90.     By engaging in the bad faith conduct described above, Defendant Loiacono violated his fiduciary duties to Tea Party HD and the Plaintiffs.

91.     The Defendant's actions caused Plaintiffs to suffer damages by losing the purpose of their investment.

92.     Defendant Loiacono breached his duty as officer by diverting company funds to his own business, Defendant Heads & Tails, Inc.

93.     Defendant Loiacono intentionally concealed the diversion of funds by refusing to produce invoices for services rendered to TPHD, when repeatedly requested by Plaintiffs and their lawyer.

94.     The actions of Defendant Loiacono were not done in good faith, were not legitimate actions in furtherance of the interests of Plaintiff Tea Party HD, and were fraudulently

concealed from the members and not discoverable until recently. The full extent still has yet to be discovered, as the financials and invoices still have not been produced.

95.     Plaintiffs have been harmed by Defendant's actions, and they seek compensatory damages.

## COUNT VII - STATUTORY VIOLATION of 15 U.S.C. §78j

96.     The allegations contained in Paragraphs 1-95 are re-alleged and incorporated by this reference as if set forth herein.

97.     In connection with the sale of securities in violation of Section 10(b) and Rule 10b-5 thereunder of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b) and 17 C.F.R. 240.10b-5), Defendant by the use of means or instrumentalities of interstate commerce and of the mails, directly or indirectly and knowingly or with reckless disregard committed the following acts:

   a.     Sold securities without complying with the registration requirements of the Securities Act of 1933.

   b.     Failed to disclose material facts necessary to make the statements by Defendant to the Plaintiffs not misleading.

98.     In order to induce the Plaintiffs to invest in TPHD, Defendant Loiacono made representations relating to the use of the Plaintiffs' investment funds, which included untrue statements and/or omissions of material facts they should have known would be relied upon by the Plaintiffs including but not limited to the following:

   a.     Funds from the promissory notes were to be invested as TPHD operating capital;

   b.     TPHD would pay back the initial investment, plus substantial sums, in three years.

c. TPHD was sufficiently capitalized to pay the returns promised;

d. TPHD website was performing well and getting over a million hits;

e. TPHD was a real company that would be grown by other investors, advertising sales, and real events posted on the website.

f. Failing to disclose that Hemrick's money was not deposited to any account of TPHD, but rather Defendant Heads & Tails, Inc.;

g. Failing to disclose that Defendant Loiacono did not contribute $60,000 as represented.

h. Falsified information relating to revenue that would be generated from "creative services" and commercials.

i. Representing a magic "breakeven point" then falsifying his ability to accurately tabulate the information.

99. In light of TPHD's insolvent state, because the capital funds were used to enrich Loiacono alone, Plaintiffs lost their investment, and the facts withheld from the Plaintiffs are material, and if these material omissions were disclosed to the Plaintiffs, the Plaintiffs would not have invested in TPHD.

100. In light of TPHD's inability to pay Plaintiffs under the terms promised, these facts which were misstated by the Defendant directly and/or indirectly through the actions and statements of others to the Plaintiffs constitute untrue statements of present material facts, and if the true facts were fully disclosed, the Plaintiffs would not have relied on said misstatements when investing in TPHD.

101. Plaintiffs did not fully discover the omission of material facts and the falsity of any misstatements until on or about February 2011. Sufficient time has not elapsed since the discovery

of the omissions of material facts or the falsity of material misstatements or since such discovery could have been made by the exercise of reasonable diligence to bar this action.

102.    Plaintiffs have been damaged in an amount equal to their entire investment and request rescission of the membership contract and return of the amount of their investment, other expenditures they have made, plus accrued interest at the statutory rate.

## COUNT VIII - STATUTORY VIOLATION 15 U.S.C. §77q

103.    The allegations contained in Paragraphs 1-102 are re-alleged and incorporated by this reference as if set forth herein.

104.    In connection with the sale of Securities, and in violation of Section 17(a) of the Securities Act of 1933 (15 U.S.C. §77q), Defendant, by the use or means or instrumentalities of interstate commerce and of the mails, directly or indirectly and knowingly or with reckless disregard committed the following acts:

a.    Obtained money from the Plaintiffs by means of untrue statements of material facts and/or omitted to state material facts necessary to make the statements made by the Defendant not misleading.

b.    Engaged in transactions, practices, or course of business which operated as a fraud or deceit upon the Plaintiffs, investors in Tea Party HD, LLC.

105.    In order to obtain money from the Plaintiffs, the Defendant made representations directly or indirectly through the actions and statements of his unknowing agent William Hemrick, relating to the use of the investment funds which contained untrue statements and/or omissions of material facts they should have known would be relied upon the by Plaintiffs.

106. Defendant negligently remained silent and/or failed to disclose material facts to the Plaintiffs when in fact said Defendant Loiacono had actual knowledge of the inability of TPHD to ever be a viable company and pay the return promised to the Plaintiffs.

107. The facts withheld from and/or misstated to the Plaintiffs are material, and if these material omissions and/or true facts were correctly disclosed to the Plaintiffs, the Plaintiffs would not have invested in TPHD.

108. Plaintiffs did not fully discover the omitted material facts and misstatements until early 2011. Sufficient time has not elapsed since the discovery of the omissions of material facts or the falsity of material misstatements or since such discovery could have been made by the exercise of reasonable diligence to bar this action.

109. Plaintiffs have been damaged in an amount equal to their entire investment and request rescission of the contract and return of the amount of their investment plus accrued interest at the statutory rate, as well as lost business opportunity.

## COUNT IX - STATUTORY VIOLATION 15 U.S.C.§77l

110. The allegations contained in Paragraphs 1-109 are re-alleged and incorporated by this reference as if set forth herein.

111. In connection with the sale of Securities, and in violation of Section 12(a) of the Securities Act of 1933 (15 U.S.C. §77l), Defendant Loiacono sold and offered to sell securities in violation of the registration and prospectus requirements of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

112. Defendant Loiacono did not have an effective registration statement in place at the time the membership interests were sold to Plaintiffs as is required under Section 5(a).

113.    Defendant Loiacono did not provide the Plaintiffs a prospectus prior to the sale of the membership interests as is required under Section 5(b).

114.    Plaintiffs have been damaged in an amount equal to their entire investment and request rescission of the contract and return of the amount of their investment plus accrued interest at the statutory rate.

## COUNT X - STATUTORY VIOLATION 15 U.S.C. §77o

115.    The allegations contained in Paragraphs 1-114 are re-alleged and incorporated by this reference as if set forth herein.

116.    Defendant Loiacono acted as controlling person within the meaning of §15 of the Securities Act of 1933 (15 U.S.C. §77o). By reason of his role as the sole director of day to day operations in TPHD and unilateral control of the accounting of TPHD, he had the power to influence and did influence directly and indirectly TPHD to engage in the unlawful acts and conduct complained of herein.

117.    Defendant Loiacono at all relevant times acted as control person of TPHD, and had the power to influence and exercised the same to cause TPHD to engage in the unlawful acts and conduct complained of herein.

118.    Plaintiffs have been damaged in an amount equal to their entire investment and request Defendants be held jointly and severable liable for the amount of the Plaintiffs' investment plus accrued interest at the statutory rate.

## COUNT XI - STATUTORY VIOLATION 15 U.S.C. §78t

119.    The allegations contained in Paragraphs 1-118 are re-alleged and incorporated by this reference as if set forth herein.

120.     Defendant Loiacono acted as controlling person within the meaning of §20 of the Securities Act of 1934 (15 U.S.C. 78t). By reason of his role as the sole director of day to day operations in TPHD and unilateral control of the accounting of TPHD, he had the power to influence and did influence directly and indirectly TPHD to engage in the unlawful acts and conduct complained of herein.

121.     Defendant Loiacono at all relevant times acted as control person of TPHD, and had the power to influence and exercised the same to cause TPHD to engage in the unlawful acts and conduct complained of herein.

122.     Plaintiffs have been damaged in an amount equal to their entire investment and request Defendants be held jointly and severable liable for the amount of the Plaintiffs' investment plus accrued interest at the statutory rate.


### COUNT XII - STATUTORY VIOLATION of Tenn. Code. Ann. § 48-2-104

123.     Plaintiffs reallege the allegations contained in Paragraphs 1-122 and the allegations are incorporated by this reference as if set forth herein.

124.     T.C.A. § 48-2-104 states:

> (a) It is unlawful for any person to sell any security in this state unless:
> **(1)** It is registered under this part;
> **(2)** The security or transaction is exempted under *§ 48-2-103*; or
> **(3)** The security is a covered security.

125.     The membership interest issued by TPHD are securities as the term is defined in T.C.A. § 48-2-102(16) and are not exempt under T.C.A. § 48-2-103.

126.     The promissory notes have not been registered in compliance with the T.C.A. § 48-2-101 *et seq.*

127.    Plaintiffs request damages equal to the consideration paid for the promissory notes plus interest at the rate of 10% per annum from the date of payment of the consideration.

## COUNT XIII - STATUTORY VIOLATION of Tenn. Code. Ann. § 48-2-109(a)

128.    Plaintiffs reallege the allegations contained in Paragraphs 1-127 and the allegations are incorporated by this reference as if set forth herein.

129.    T.C.A. § 48-2-109(a) states "It is unlawful for any person to transact business from or in this state as a broker-dealer or agent unless such person is registered as a broker-dealer or agent under this part...."

130.    Defendant Loiacono initiated the sale of the membership in TPHD to Plaintiffs by giving a sales presentation about the investment opportunity and high rates of returns at the Natchez Trace County Club.

131.    Loiacono is not registered as a broker-dealer in the state of Tennessee.

132.    Plaintiffs request damages equal to the consideration paid for the membership purchased, plus interest at the rate of 10% per annum from the date of payment of the consideration.

## COUNT XIV - STATUTORY VIOLATION of Tenn. Code. Ann. § 48-2-121(a)

133.    Plaintiffs re-allege the allegations contained in Paragraphs 1-132 and the allegations are incorporated by this reference as if set forth herein.

134.    T.C.A. § 48-2-121(a) states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly, to:
(1) Employ any device, scheme, or artifice to defraud.
(2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or
(3) Engage in any act, practice or course of business which operates or would operate as fraud or deceit upon any person.

135. Tea Party HD is an unlawful investment scheme organized by Defendant Loiacono to defraud investors by having them invest a membership to a sham company. The funds paid are never invested to grow TPHD, but rather TPHD is a sham front for Loiacono to create opportunities for his own corporation, Defendant Heads & Tails, to send fraudulent invoices.

136. Defendant Loiacono directly and/or indirectly through the actions and statements of others falsely represented to Plaintiffs that their investment in membership in TPHD would be invested as operating capital, in a legitimate company. Defendant Loiacono also falsely stated that the TPHD website was performing well with million of hits, in order to defraud Plaintiff Huffnagle into contributing an additional $35,000 beyond his initial $70,000.

137. In reality, Plaintiffs' investment was used to personally enrich Defendant Loiacono, and for other uses not represented to the Plaintiffs. TPHD was never intended to be profitable and could not make the promised return of investment, as far as initial principle, or otherwise.

138. Plaintiffs request damages equal to the consideration paid for their initial investment plus interest at the rate of 10% per annum from the date of payment of the consideration.

### COUNT XV - TENNESSEE CONSUMER PROTECTION ACT

139. Plaintiffs re-allege the allegations contained in Paragraphs 1-138 and the allegations are incorporated by this reference as if set forth herein.

140. Defendants' actions and misrepresentations concerning the sale of membership in Tea Party HD in Tennessee violate the Consumer Protection Act of 1977, T.C.A. § 47-18-101 (et seq.) as specified below.

141. Under § 47-18-104(b)(12), "Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" is a violation of the Consumer Protection Act.

142. Defendant Loiacono directly and/or indirectly through the actions and statements of others represented to Plaintiffs that the payment of $35,000 per share entitled them to receive a 1% membership interest, and ¼ governing interest, in TPHD.

143. In reality, Defendant Loiacono knew that TPHD was a fraudulent investment scheme, dependent on bringing in other investors to sustain Loiacono taking all the money out to pay himself, his company Defendant Heads & Tails, and his family members.

144. Under § 47-18-104(b)(27), "Engaging in any other act or practice which is deceptive to the consumer or to any other person" is a violation of the Consumer Protection Act.

145. Defendant Loiacono directly and/or indirectly through the actions and statements of others falsely represented to the Plaintiffs that they would receive huge returns on their investment in Tea Party HD in order to deceive them to invest in the sham TPHD.

146. The Defendant's misrepresentations were willful and were committed with knowledge of the falsity of the statements.

147. Defendant Loiacono's violations of Tennessee Consumer Protection Act have harmed Plaintiffs resulting in the loss of their entire investment.

148. Plaintiffs request treble damages pursuant to T.C.A. § 47-18-109 (a)(3), reasonable attorney's fees and costs pursuant to T.C.A. § 47-18-109(e)(1), and that the Defendant Loiacono and Defendant Heads & Tails be required to disgorge their ill-gotten gains.

**PRAYER FOR RELIEF**

Plaintiffs pray the following relief from this Honorable Court:

1.      That service of process issue and Defendants be required to come forth and answer.

2.      That a jury of 12 be impaneled to try this cause.

3.      That Plaintiffs be awarded money damages for the securities violations, conversion, and torts by the Defendants.

4.      That the Contribution Agreements between the Plaintiffs and TPHD and Defendants be rescinded and the funds either paid to TPHD or returned to Plaintiffs.

5.      That the Plaintiffs be awarded punitive damages for Defendants' intentional, reckless and fraudulent conduct in the amount of nineteen million dollars ($19,000,000).

6.      For the imposition of a constructive trust, in favor of the Plaintiffs, upon any benefits improperly received by Defendants as a result of their wrongful conduct.

7.      For an award of the costs and disbursements of this action, including reasonable attorneys' and experts' fees provided under Tennessee law.

8.      For pre-judgment interest.

9.      For an accounting of the funds taken from the corporation.

10.     A bifurcated trial on the issue of punitive damages.

11.     That Plaintiffs be awarded treble damages pursuant to T.C.A. § 47-18-109(a)(3).

12.     That Plaintiffs be awarded attorney's fees and costs pursuant to T.C.A. § 47-18-109(e)(1).

Such other further relief that this Honorable Court deems proper and just.

Respectfully submitted,

/s/ Kristin Fecteau
Kristin J. Fecteau BPR# 19772
501 Union St. Suite 307
Nashville, Tennessee 37219
(615) 248-8600

STATE OF TENNESSEE )
COUNTY OF Davidson )

Before me, the undersigned authority, a notary public in and for State and County, personally appeared HOWARD LUARTES, who, being duly sworn according to law, deposes and says that he is over the age of twenty-one (21) and under no disability and that the facts set forth in the foregoing Verified Complaint are true upon personal knowledge or, where indicated in the Complaint, upon information and belief.

FURTHER AFFIANT SAITH NOT.

HOWARD LUARTES

Sworn before me on this the 14 day of October, 2011.

Notary Public

My Notary Expires on _____ My Commission Expires March 16, 2015